609 P.2d 1252

Robert E. TINLEY, Jr.,
Plaintiff-Appellant,

v.

C. R. DAVIS, Defendant,

and

James R. Toulouse, Individually, Toulouse, Krehbiel & DeLayo, P. A., Argonaut Insurance Co., and Great American Insurance Company, Defendants-Appellees.

No. 4119.

Court of Appeals of New Mexico.

March 27, 1980.

David L. Norvell, Samuel A. Francis, and Jon T. Kwako, Albuquerque, for plaintiff-appellant.

Paul Butt, Shaffer, Butt, Thornton & Baehr, P. A., Albuquerque, for Toulouse, Krehbiel & DeLayo, P. A.

Robert H. Clark, Peter H. Johnstone, Keleher & McLeod, P. A., Albuquerque, for Argonaut Ins. Co.

Frank H. Allen, Jr., Larry Ausherman, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for Great Am. Ins. Co.

## OPINION

SUTIN, Judge.

Plaintiff, Robert E. Tinley, Jr., appeals from a summary judgment granted James R. Toulouse, Toulouse, Krehbiel and Delayo (Toulouse), Argonaut Insurance Company, and American Empire Insurance Company. We affirm.

Tinley sued these defendants and defendant C. R. Davis for defamatory statements made by Davis to Tinley's employer which caused the termination of Tinley's employment as President and Chief Executive Officer of the Fidelity National Bank. Tinley claimed that Davis was negligently employed by defendants and acted within the course and scope of his employment.

The trial court found:

\*     \*     \*     \*     \*     \*

3. Defendant C. R. Davis was acting outside the course and scope of his alleged employment by these defendants at any and all times that alleged defamatory statements were made concerning the Plaintiff, Robert Tinley, and there is no evidence in the record to raise genuine issue of fact as to this issue.

4. Therefore, these Defendants are entitled to judgment as a matter of law.

The only issue on this appeal is:

Does a genuine issue of material fact exist on whether Davis was acting within the course and scope of his employment by defendants when defamatory statements were made concerning Tinley?

To answer this question we must proceed in accordance with the following rules laid down in *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

*First*, the burden is on defendants to show an absence of a genuine issue of material fact, i. e., that Davis was acting outside the course and scope of his employment. This burden means that the defendants must make a prima facie showing by such evidence as is sufficient in law to raise a presumption of fact or establish the fact unless rebutted.

*Second*, once this prima facie showing is made by defendants, the burden shifts to plaintiff to come forward and demonstrate that a genuine issue of fact exists on whether Davis was acting within the course and scope of his employment.

A. *Defendants established a prima facie showing that Davis acted solely on his own behalf, and Tinley failed to meet his burden.*

To define "the course and scope of employment" is variable. *White Auto Stores v. Reyes*, 223 F.2d 298 (10th Cir. 1955); *Bolt v. Davis*, 70 N.M. 449, 374 P.2d 648 (1962); *Massey v. Beacon Supply Company*, 70 N.M. 149, 371 P.2d 798 (1962); *Lang v. Cruz*, 74 N.M. 473, 394 P.2d 988 (1964); *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968); *McFatridge v. Harlem Globe Trotters*, 69 N.M. 271, 365 P.2d 918 (1961); *Miera v. George*, 55 N.M. 535, 237 P.2d 102 (1951); *Nabors v. Harwood Homes, Inc.*, 77 N.M. 406, 423 P.2d 602 (1967).

To state each element involved in the various definitions and then attempt to apply the facts to each element is difficult and hazardous. *Bolt, supra*, accurately stated this perplexing problem:

Much has been said by the courts in their opinions on the subject before us. While the rule in scope of employment cases appears to be simple, there has always been great difficulty in its application, and it has been frequently said that it is impossible to state it briefly and comprehensively so as to make it clearly applicable to all cases, because of the ever-varying facts of each particular case. [70 N.M. 463, 374 P.2d 658.]

We are confronted with an act of defamation committed by Davis while an employee of defendants. Employers may be liable for their employees' unauthorized slanderous statements made within the apparent scope and course of employment. *Sanders v. Day*, 2 Wash.App. 393, 468 P.2d 452 (1970).

In *Sanders*, Day was Corporate Vice-President of Midnight Sun Broadcasting, Inc., and Irene Sanders was a secretary in a Seattle advertising agency. Both participated in a golf tournament of the Advertising Golf Association of Washington. After the golf tournament had been completed and after Day's conversation with Sanders, and while playing the "19th" hole, Day stated that he and Irene had engaged in an act

of sexual impropriety. Everyone who heard him agreed that Day said nothing at the time to indicate that he was acting for or furthering the business of Midnight Sun in any way. Sanders contended that Day's motive in defaming her character was a misguided desire to ingratiate himself with potential customers of Midnight Sun; that Day's slanderous utterances should not have come as any surprise; that his public relation personality was that of the hail fellow with a ready anecdote or ribald story.

Summary judgment was granted Midnight Sun. Sanders appealed and the court reversed. The court said:

> Summary judgment procedures are not designed to resolve inferential disputes. "It seems obvious that in situations where, *though evidentiary facts are not in dispute, different inferences may be drawn therefrom as to ultimate facts* such as intent, knowledge, good faith, negligence, et cetera, *a summary judgment would not be warranted.*" [Citation omitted.]
>
> Expressing no opinion as to the merits, *we hold that Sanders is entitled to have the inferences drawn by the trier of fact.* At trial, of course, the burden of persuasion will be hers. [467 P.2d 455–6.] [Emphasis added.]

■ This inferential rule has been adopted in New Mexico. *Fischer v. Mascarenas*, 93 N.M. 199, 598 P.2d 1159 (1979). The court said, citations omitted:

> . . . The remedy should not be employed where there is the slightest doubt as to the existence of an issue of material fact. Even where the basic facts are undisputed, if equally logical but conflicting inferences can be drawn from the facts, summary judgment should be denied. [Emphasis added.] [598 P.2d 1161.]

■ We shall apply this rule to the burden placed on defendants. The facts are detailed and complex. Voluminous depositions were taken, interrogatories propounded and a number of affidavits filed. We begin with the proposition that Toulouse, Argonaut and Great American did not themselves directly defame Tinley. Their liability is therefore vicarious in nature only and based upon the conduct of Davis.

Toulouse was attorney for and represented Argonaut and Great American in all dealings with Davis. In April, 1976, Argonaut and Great American, through Toulouse, entered into a written agreement with Davis and his son in which each insurance company agreed to pay Davis $3,333.00 and all expenses incurred for an investigation of claims that the parties had against Wood Construction, Inc., Paul Wood, Wanda Wood, Fidelity National Bank and others for fraudulent transfer of property. It also set forth the total amount of the claims of the parties and the distribution of any funds recovered. The agreement also provided:

> (3) All parties shall cooperate together and that all information procured by one party shall be made available immediately to all other parties . . . .

In addition, Davis and his son were employed to investigate all matters relating to the bankruptcy proceedings of Paul and Wanda Wood as well as the relationship between Paul Wood and Fidelity National Bank and any of its officers, employees and agents. At this time, Davis and his son were creditors of Paul Wood. Wood and Davis had executed continuing guarantees to Fidelity National Bank for C & H Construction Co., Inc., and Davis was exploring the possibilities of suretyship defenses to Davis' debt to Fidelity National Bank as a consequence of any dealings between the Bank, its employees and agents and Paul Wood.

The origins of the dispute between Davis and Fidelity National Bank can be traced to the facts recited in *Citizens Bank v. C & H Const. & Paving Co., Inc.*, 89 N.M. 360, 552 P.2d 796 (Ct.App.1976) as modified, 90 N.M. 208, 561 P.2d 481 (1977). *Fidelity Bank* as intervenor recovered judgment against C & H, Davis, his wife and son, on their guarantees in the sum of $193,000.00 and established a priority over the accounts receivable of C & H. Davis and his son obtained judgments against Citizens Bank in the sum

of $350,000.00. *Fidelity Bank* was trying to collect from Davis the proceeds of the Citizen's Bank litigation.

Davis and Paul Wood had had a number of business dealings together and had jointly guaranteed certain obligations to *Fidelity Bank*. Paul Wood filed for bankruptcy the first week of June in 1976. *Fidelity Bank* had no one to pursue but Davis and Davis had no one to pursue but Wood and *Fidelity Bank*. The Davises' judgment was handed down on July 20, 1976, and Davis' defamatory statements against Tinley were made nine days later, on July 29, 1976.

Tinley was President and Chief Executive Officer of Fidelity Bank until he resigned in early September, 1976.

Unquestionably, Davis' employment included the investigation of Tinley and a report to defendants. Indisputably, Davis' employment was limited to this work. Any conduct of Davis that occurred during his investigation of Tinley as well as Davis' reports to defendants were within the course and scope of his employment. There was no modification of this employment contract.

We now approach the day the defamatory statements were made by Davis against Tinley on July 29, 1976. The last meeting that Toulouse had with Davis was on July 19, 1976. This was the last time that Toulouse asked Davis to perform any services pursuant to the Memorandum Agreement. Davis was asked to compile his files that contained his investigation and deliver them for use by Martin Paskind, the trustee in the Wood bankruptcy.

On July 29, 1976, Davis and Fred Standley, his attorney, went to the office of Milo L. McGonagle who was President and Chief Executive Officer of the First National Bank in Santa Fe. The defamatory statements were there made. Toulouse was aware of the fact that Davis was going to see Mr. McGonagle, but Toulouse never suggested or ordered Davis to see him. The fact that Davis was acting under the advice of his personal attorney, that Davis' relationship with Toulouse had ended 10 days prior thereto established a prima facie

showing that Davis, while in the McGonagle office, was not acting within the course and scope of his employment with defendants. It was no part of his investigatory work. This work had ended ten days before the McGonagle meeting. Neither can any inferences be drawn that Davis' visitation with McGonagle had any contact with Toulouse or affected in any way the pursuits of Argonaut or American Empire Insurance in the investigation of Tinley. Defendants had met their burden.

At the close of the hearing on defendants' motion for summary judgment, the court inquired of Tinley's lawyer:

. . . What I need to know is what I need to read in this record to determine when Mr. Davis went to Santa Fe whether he was acting on his own behalf or on behalf of two insurance companies and you need to tell me what portions of this record I need to read so I can see what it says on that.

The answer was:

Well, I would have to review it and give you that, Your Honor . . . .

If any such review was made, it was not disclosed to the trial court. Neither does it appear in Tinley's briefs in this appeal or in oral argument. We have carefully read the briefs filed, the pertinent portions of the depositions and affidavits and find nothing that can, by way of facts, or inferences derived therefrom, establish a genuine issue of material fact that Davis was acting within the course and scope of his employment with defendants. Tinley failed in his burden.

The summary judgment is affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., concurs in result.